**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | |
|---|---|
| NANDORF, INC., d/b/a UNIQUE THRIFT STORE, *et al.*, | |
| Plaintiffs, | Case No. 18-cv-05285 |
| v. | Judge John Robert Blakey |
| APPLIED UNDERWRITERS CAPTIVE RISK ASSURANCE COMPANY, INC., | |
| Defendant. | |

## MEMORANDUM OPINION AND ORDER

This case presents the question: Who decides whether a dispute is arbitrable in the first instance? Plaintiffs Nandorf, Inc., d/b/a Unique Thrift Store, and Southwest Management Company (collectively, Nandorf) purchased a workers' compensation insurance package from Defendant Applied Underwriters Captive Assurance Company, Inc. (AUCRA). As part of the package, Nandorf entered into a Reinsurance Participation Agreement (RPA) with AUCRA. AUCRA claims that Nandorf refuses to pay amounts due and owing under the RPA; thus, AUCRA filed a demand for arbitration before the American Arbitration Association (AAA) in May 2015. Nandorf refuses to proceed before the AAA and filed this action seeking to enjoin AUCRA from proceeding with that arbitration. [1-1].

AUCRA moves to compel arbitration, or in the alternative, to transfer venue to the District of Nebraska. [16]. For the reasons explained below, this Court

1

converts AUCRA's motion into a motion to dismiss for improper venue under Rule 12(b)(3), grants that motion, and dismisses this case without prejudice.

I.  **Background**

AUCRA is a captive reinsurance company, which from 2010 to 2014 offered a workers' compensation program known as EquityComp. [1-1] at 3, 4. Among other things, the EquityComp program comprised a retrospective rating plan, embodied in the RPA. *Id.* at 4. In October 2010, Nandorf purchased a worker's compensation policy from AUCRA's affiliate and executed the RPA. *Id.* at 5. The RPA, which provided Nandorf three years of workers' compensation insurance coverage, was effective from October 4, 2010 to October 3, 2013. *Id.* at 14, 15.

Paragraph 13 of the RPA contains an arbitration provision, stating:

(A) It is the express intention of the parties to resolve any disputes arising under this Agreement without resort to litigation in order to protect the confidentiality of their relationship and their respective businesses and affairs. Any dispute or controversy that is not resolved informally pursuant to sub-paragraph (B) of Paragraph 13 arising out of or related to this Agreement shall be fully determined in the British Virgin Islands under the provisions of the American Arbitration Association.

(B) All disputes between the parties relating in any way to (1) the execution and delivery, construction or enforceability of this Agreement, (2) the management or operations of the Company [AUCRA], or (3) any other breach or claimed breach of this Agreement or the transactions contemplated herein shall be settled amicably by good faith discussion among the parties hereto, and failing such amicable settlement, finally determined exclusively by binding arbitration in accordance with the procedures provided herein. The reference to this arbitration clause in any specific provision of this Agreement is for emphasis only, and is not intended to limit the scope, extent or intent of this arbitration clause, or to mean that any other provision of this Agreement shall not be fully subject to the terms of this arbitration clause. All disputes arising with

2

respect to any provision of this Agreement shall be fully subject to the terms of this arbitration clause.

*Id.* at 16–17.

The RPA further states: "All arbitration proceedings shall be conducted . . . in accordance with the rules of the American Arbitration Association and shall take place in Tortola, British Virgin Islands or at some other location agreed to by the parties." *Id.* at 17.

The RPA also contains a general choice-of-law clause:

This Agreement shall be exclusively governed by and construed in accordance with the laws of Nebraska and any matter concerning this Agreement that is not subject to the dispute resolution provisions of Paragraph 13 hereof shall be resolved exclusively by the courts of Nebraska without reference to its conflict of laws.

*Id.* at 18.

In August 2014, AUCRA sent a letter to Nandorf, stating that Nandorf had incurred amounts due under the RPA and threatening to file a demand for arbitration. [17-5] at 2. AUCRA filed a demand for arbitration with AAA on May 8, 2015. [1-1] at 169–70. The demand named "Kenneth Alterman d/b/a Unique Thrift Store" as the respondent. *Id.* Nandorf claims that it repeatedly advised AUCRA that their dispute should not go through arbitration. *Id.* at 7.

On July 3, 2018, Nandorf filed an action in the Circuit Court of Cook County, Illinois, seeking to stay the arbitration proceedings instituted by AUCRA. *Id.* at 2. The complaint seeks relief to: (1) declare that Alterman, the former president of

Nandorf's parent company, is not a proper party to the arbitration;[1] (2) declare the RPA's arbitration provision invalid; and (3) enjoin the arbitration. *Id.* at 8–11; *see also* [17-3] at 2. Defendant AUCRA removed the case to this Court in August 2018, [1-1], and subsequently moved to compel arbitration, [16].

## II. Legal Standard

Congress enacted the Federal Arbitration Act (FAA) in 1925 to counter generalized judicial hostility to arbitration as an alternative to litigation and to allow agreements to arbitrate to be enforced. *AT&T Mobility LLC v. Concepcion*, 563 U.S. 333, 339 (2011). Arbitration remains "a matter of contract." *First Options of Chicago, Inc. v. Kaplan*, 514 U.S. 938, 943 (1995). The FAA provides that arbitration agreements in contracts involving interstate commerce are "valid, irrevocable, and enforceable." 9 U.S.C. § 2. State law cannot bar enforcement of the FAA, even in the context of state-law claims. *Buckeye Check Cashing, Inc. v. Cardegna,* 546 U.S. 440, 445 (2006).

Under the FAA, arbitration may be required if three elements are present: (1) an enforceable written agreement to arbitrate; (2) a dispute within the scope of the arbitration agreement; and (3) a refusal to arbitrate. *Scheurer v. Fromm Family Foods LLC*, 863 F.3d 748, 752 (7th Cir. 2017) (citing *Zurich Am. Ins. Co. v. Watts Indus.*, 417 F.3d 682, 687 (7th Cir. 2007)). The party opposing arbitration bears the burden of demonstrating the arbitration agreement is unenforceable and the claims are unsuitable for arbitration. *Green Tree Fin. Corp.-Alabama v. Randolph*, 531 U.S.

---

[1] Although Alterman is, along with Nandorf, a named plaintiff in this lawsuit, AUCRA concedes that it no longer seeks to proceed against Alterman in the arbitration. [17] at 15.

79, 91–92 (2000). Courts resolve any doubts concerning arbitrability in favor of arbitration. *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24–25 (1983).

III.   Analysis

A.   **This Court Cannot Compel Arbitration Outside of This District**

As an initial matter, this Court addresses one threshold issue. Invoking the FAA, AUCRA moves to compel arbitration, asking this Court to enforce the arbitration clause contained in the RPA. [16] [17]. The Federal Arbitration Act (FAA) provides:

> The court shall hear the parties, and upon being satisfied that the making of the agreement for arbitration or the failure to comply therewith is not in issue, the court shall make an order directing the parties to proceed to arbitration in accordance with the terms of the agreement. *The hearing and proceedings, under such agreement, shall be within the district in which the petition for an order directing such arbitration is filed.*

9 U.S.C. § 4 (emphasis added).

Under Section 4, "where an arbitration agreement contains a forum selection clause, only the district court *in that forum* can issue a § 4 order compelling arbitration." *Merrill Lynch, Pierce, Fenner & Smith, Inc. v. Lauer*, 49 F.3d 323, 327 (7th Cir. 1995). Accordingly, "a district court cannot compel arbitration outside the confines of its district." *Faulkenberg v. CB Tax Franchise Sys., LP*, 637 F.3d 801, 808 (7th Cir. 2011); *see also Jackson v. Payday Fin., LLC*, 764 F.3d 765, 773 (7th Cir. 2014). Where a court faces a motion to compel arbitration in a forum outside of its district, it should dismiss the complaint under Rule 12(b)(3) if the parties' claims are

subject to arbitration. *Bahoor v. Varonis Sys., Inc.*, 152 F. Supp. 3d 1091, 1096 (N.D. Ill. 2015) (citing *Haber v. Biomet, Inc.*, 578 F.3d 553, 558 (7th Cir. 2009)).

Here, the RPA contains forum selection provisions designating Tortola, British Virgin Islands as the location for arbitration. *See* [1-1] at 16–17 ("Any dispute or controversy . . . arising out of or related to this Agreement shall be fully determined in the British Virgin Islands under the provisions of the American Arbitration Association."); *id.* at 17 ("All arbitration proceedings . . . shall take place in Tortola, British Virgin Islands or at some other location agreed to by the parties."). Because the forum selection provisions in the RPA designate a location outside this district as the place of arbitration, this Court lacks authority to compel arbitration. *Faulkenberg*, 637 F.3d at 808.

Nonetheless, the central question presented in AUCRA's motion remains the same whether this Court proceeds under the FAA or Rule 12(b)(3): Did the parties agree to arbitrate their claims? Under these circumstances, this Court can convert AUCRA's motion to a motion to dismiss under Rule 12(b)(3) and proceed "as if it is deciding a motion to compel arbitration." *Bahoor*, 152 F. Supp. 3d at 1096, 1102 (converting motion to compel arbitration into motion to dismiss under Rule 12(b)(3) where the parties' agreement designated New York as the forum for arbitration, and dismissing the plaintiff's claims because they were subject to arbitration); *Ferenc v. Brenner*, 927 F. Supp. 2d 537, 542 (N.D. Ill. 2013) (converting motion to compel arbitration to motion to dismiss under Rule 12(b)(3) where arbitration agreement designated Orange County, California as the forum for arbitration).

6

This Court will therefore convert AUCRA's motion into a Rule 12(b)(3) motion to dismiss and analyze whether the RPA dictates arbitration of the parties' dispute.

## B. The Parties Agreed to Arbitrate the Question of Arbitrability

Turning to the merits of the parties' arguments, the parties do not dispute that they entered into the RPA and that the RPA contains arbitration provisions. Nandorf, however, contends that this Court cannot enforce the parties' agreement to arbitrate. [25]. AUCRA argues that Nandorf's challenges to enforceability of the arbitration provisions must be settled by the arbitrator in the first instance. [17] [29]. For the reasons below, this Court agrees with AUCRA.

The Supreme Court has instructed that "parties may delegate threshold arbitrability questions to the arbitrator, so long as the parties' agreement does so by clear and unmistakable evidence." *Henry Schein, Inc. v. Archer & White Sales, Inc.*, 139 S. Ct. 524, 530 (2019) (internal quotation marks and citation omitted); *Rent-A-Center, W., Inc. v. Jackson*, 561 U.S. 63, 69–70 (2010). An agreement to delegate a threshold issue—also known as a delegation clause—is "simply an additional, antecedent agreement the party seeking arbitration asks the federal court to enforce." *Rent-A-Ctr.*, 561 U.S. at 70.

Courts find clear and unmistakable evidence regarding parties' intent to delegate under two circumstances. First, a robust delegation clause conferring power to the arbitrator suffices: In *Rent-A-Center*, the Supreme Court held that a contract provision stating that the "Arbitrator . . . shall have exclusive authority to resolve any dispute relating to the interpretation, applicability enforceability or formation of

7

this Agreement" constituted a clear and unmistakable delegation of arbitrability questions to the arbitrator. *Id.* at 66, 72.

Courts relying upon *Rent-A-Center* therefore consistently find intent to delegate from contractual provisions broadly directing all claims—including threshold matters—to arbitration. *See, e.g.*, *Lee v. Uber Techs., Inc.*, 208 F. Supp. 3d 886, 889, 891 (N.D. Ill. 2016) (language providing that matters concerning "enforceability, revocability or validity" of arbitration provision "shall be decided by an Arbitrator" sufficed to show intent to delegate arbitrability); *Kemph v. Reddam*, No. 13 CV 6785, 2015 WL 1510797, at *4 (N.D. Ill. Mar. 27, 2015) (contract stating "any dispute . . . will be resolved by binding arbitration" clearly evinced intent to delegate).

Second, while neither the Supreme Court nor the Seventh Circuit has passed on this issue, other federal appellate courts and courts within this district have held that incorporating AAA Rules within a contract also constitutes clear and unmistakable evidence to delegate arbitrability to arbitrators. *Huron Consulting Grp. Inc. v. Gruner*, No. 17 C 6042, 2018 WL 572709, at *6 (N.D. Ill. Jan. 24, 2018); *Ali v. Vehi-Ship, LLC*, No. 17 CV 02688, 2017 WL 5890876, at *3 (N.D. Ill. Nov. 27, 2017); *Allscripts Healthcare, LLC v. Etransmedia Tech., Inc.*, 188 F. Supp. 3d 696, 701 (N.D. Ill. 2016); *Wal-Mart Stores, Inc. v. Helferich Patent Licensing, LLC*, 51 F. Supp. 3d 713, 720 (N.D. Ill. 2014); *accord JPay, Inc. v. Kobel*, 904 F.3d 923, 937–38 (11th Cir. 2018); *Arnold v. Homeaway, Inc.*, 890 F.3d 546, 553 (5th Cir. 2018); *Brennan v. Opus Bank*, 796 F.3d 1125, 1130 (9th Cir. 2015). This "consensus view"

8

stems from Rule 7(a) of the AAA Rules, which empowers an arbitrator to decide gateway arbitrability issues, such as validity and scope of arbitration. *Ali*, 2017 WL 5890876, at *3; *cf. Preston v. Ferrer*, 552 U.S. 346, 362 (2008) (Rule 7(b) of the AAA Rules also provides arbitrators the power to determine the existence or validity of a contract of which an arbitration clause forms a part).

Here, the RPA falls within both circumstances under which courts find clear and unmistakable intent to delegate arbitrability. First, the RPA contains a robust delegation provision stating: "Any dispute or controversy . . . arising out of or related to this Agreement shall be fully determined in the British Virgin Islands under the provisions of the American Arbitration Association." [1-1] at 16–17. It also provides, in more granular detail, that:

> (B) All disputes between the parties relating in any way to (1) the execution and delivery, construction or enforceability of this Agreement, (2) the management or operations of the Company [AUCRA], or (3) any other breach or claimed breach of this Agreement or the transactions contemplated herein shall be . . . finally determined exclusively by binding arbitration in accordance with the procedures provided herein. The reference to this arbitration clause in any specific provision of this Agreement is for emphasis only, and is not intended to limit the scope, extent or intent of this arbitration clause, or to mean that any other provision of this Agreement shall not be fully subject to the terms of this arbitration clause. All disputes arising with respect to any provision of this Agreement shall be fully subject to the terms of this arbitration clause.

*Id.* at 17. Thus, the RPA contains language both broadly directing all disputes to arbitration and referring threshold issues to arbitration. *Id.* at 16–17. Under *Rent-A-Center*, such broad language constitutes clear and unmistakable evidence that the parties agreed to delegate arbitrability. 561 U.S. at 66, 72.

Next, the parties' reference to and incorporation of AAA Rules further confirms this delegation. Under the RPA, the parties agreed that "[a]ny dispute or controversy . . . arising out of or related to this Agreement shall be fully determined . . . under the provisions of the American Arbitration Association." [1-1] at 16–17. As discussed above, such express incorporation of AAA Rules provides additional clear and unmistakable evidence of the parties' intent to arbitrate arbitrability. *See Ali*, 2017 WL 5890876, at *3 ("The consensus view of federal case law is that the incorporation by reference of the AAA Rules is clear and unmistakable evidence of an intention to arbitrate arbitrability.") (internal quotation marks omitted).

### C. The Nebraska Act and Reverse-Preemption

#### 1. Nandorf's Reverse-Preemption Argument

Hoping to avoid arbitration, Nandorf argues that Nebraska law governs the RPA by way of the RPA's choice-of-law clause. [25] at 8–14. The RPA's choice-of-law clause provides:

> This Agreement shall be exclusively governed by and construed in accordance with the laws of Nebraska and any matter concerning this Agreement that is not subject to the dispute resolution provisions of Paragraph 13 hereof shall be resolved exclusively by the courts of Nebraska without reference to its conflict of laws.

[1-1] at 18. Relying upon this clause, Nandorf invokes the Nebraska Uniform Arbitration Act (Nebraska Act), which prohibits arbitration of "any agreement concerning or relating to an insurance policy other than a contract between insurance companies including a reinsurance contract," Neb. Rev. Stat. § 25-2602.01(f)(4). [25] at 8–14. Nandorf then cites to the federal McCarran-Ferguson Act, which states that

no act of Congress shall be construed to invalidate, impair, or supersede "any law enacted by any State for purposes of regulating the business of insurance." 15 U.S.C. § 1012. Reading these two statutes together, Nandorf argues that the McCarran-Ferguson Act allows the Nebraska Act to reverse-preempt the FAA, thus rendering the RPA's arbitration provisions unenforceable. [25] at 8–9.

### 2. Split of Authority

This Court is hardly the first to consider Nandorf's reverse-preemption theory; indeed, AUCRA's RPA has been subject to challenges in both federal and state courts, and courts have split in deciding whether to compel arbitration under the RPA.

The Nebraska Supreme Court and the California Court of Appeals have both adopted the position Nandorf advocates. That is, both courts found that the RPA's Nebraska choice-of-law provision governed, and thus the Nebraska Act's prohibition against arbitration mandated findings that courts (not arbitrators) determine arbitrability. *See Citizens of Humanity, LLC v. Applied Underwriters Captive Risk Assurance Co., Inc.*, 909 N.W.2d 614 (Neb. 2018) (*Citizens I*); *Citizens of Humanity, LLC v. Applied Underwriters, Inc.*, 226 Cal. Rptr. 3d 1 (Cal. Ct. App. 2017) (*Citizens II*). The Fourth Circuit has also refused to compel arbitration under the same RPA, reasoning that state-law renders void the RPA's delegation provisions. *Minnieland Private Day Sch., Inc. v. Applied Underwriters Captive Risk Assurance Co., Inc.*, 867 F.3d 449, 457 (4th Cir. 2017).

In contrast, the Third and Sixth Circuits have enforced the RPA's delegation provisions despite the Nebraska choice-of-law provision, reasoning that the parties

11

clearly and unmistakably delegated arbitrability to the arbitrator. *S. Jersey Sanitation Co., Inc. v. Applied Underwriters Captive Risk Assurance Co., Inc.*, 840 F.3d 138, 146 (3d Cir. 2016); *Milan Exp. Co. v. Applied Underwriters Captive Risk Assur. Co.*, 590 F. App'x 482, 484–85 (6th Cir. 2014) (holding that because "enforceability is a question the parties expressly agreed to submit to arbitration," that issue remains "subject to resolution exclusively by settlement negotiation and binding arbitration, not by litigation.").

And, various federal district courts have agreed with the Third and Sixth Circuits, enforcing the delegation provisions within the RPA despite the Nebraska choice-of-law clause. *See, e.g.*, *Ed's Pallet Servs., Inc. v. Applied Underwriters, Inc.*, No. 15-CV-1163-SMY-SCW, 2017 WL 9287091, at *3 (S.D. Ill. Apr. 7, 2017) (concluding that under the RPA, any question as to arbitrability should be decided by the arbitrator); *Hillyard, Inc. v. Applied Underwriters Captive Risk Assurance Co., Inc.*, No. 16-6062-CV-SJ-FJG, 2017 WL 5957816, at *3 (W.D. Mo. Feb. 28, 2017) (rejecting argument that delegation clause is invalid, because "such an issue is for the arbitrator to decide in the first instance"); *Mountain Valley Prop., Inc. v. Applied Risk Servs., Inc.*, No. 1:15-CV-00187-DBH, 2015 WL 13729967, at *6 (D. Me. Dec. 22, 2015) (even though the reverse-preemption argument "is not without merit," the court could not "consider the relative merit of a party's challenge to the enforceability of an arbitration provision when assessing the threshold question of whether the court or the arbitrator is to decide the arbitrability issue."), *report and recommendation adopted as modified*, No. 1:15-CV-187-DBH, 2016 WL 755614 (D. Me. Feb. 25, 2016).

### 3. Reverse-Preemption Does Not Apply

Despite the split of authority, Nandorf's reverse-preemption argument fails to persuade this Court, because such a broad reading of the parties' Nebraska choice-of-law provision would essentially supplant the arbitration provision in the RPA, and ignore the fair import of the contract's plain language in contravention of the Supreme Court's ruling in *Mastrobuono v. Shearson Lehman Hutton, Incorporated*, 514 U.S. 52 (1995).

In *Mastrobuono*, the Supreme Court instructed that where a contract contains a choice-of-law provision *and* an arbitration provision, the choice-of-law provision should be construed to "encompass substantive principles that [the given state's laws] would apply, but not to include special rules limiting the authority of arbitrators." *Id.* at 63–64; *see also Preston*, 552 U.S. at 353 (rejecting reading a generic choice-of-law clause to incorporate California anti-arbitration law because the agreement at issue expressly incorporated AAA Rules). In other words, "the choice-of-law provision covers the rights and duties of the parties, while the arbitration clause covers arbitration; neither sentence intrudes upon the other." *Mastrobuono*, 514 U.S. at 64. This common-sense construction harmonizes the two provisions, thus avoiding any "untenable" conflict with one another. *Id.* at 63–64 (courts must "harmonize" the provisions, reading the general choice-of-law clause "to encompass substantive principles . . . but not to include special rules limiting the authority of arbitrators.").[2]

---

[2] As AUCRA correctly notes, neither the *Citizens* cases, nor the *Minnieland* opinion cited by opposing counsel, addressed whether expressly incorporating the AAA Rules into an arbitration clause qualifies as an additional "clear and unmistakable" indicia of the parties' intent to delegate arbitrability arbitrators. *See generally Citizens I*, 909 N.W.2d 614; *Citizens II*, 226 Cal. Rptr. 3d 1; *Minnieland*, 867

13

### D. Collateral Estoppel Does Not Apply

Finally, Nandorf argues that collateral estoppel bars AUCRA from seeking to enforce the delegation clause in the RPA because AUCRA has already litigated that issue and lost "at least two times." [25] at 2, 3–8. In support, Nandorf points to the two *Citizens* cases. *See id.* (citing *Citizens I*, 909 N.W.2d 614; *Citizens II*, 226 Cal. Rptr. 3d 1).

Collateral estoppel, however, does not apply if "the judgment relied upon as a basis for the estoppel is itself inconsistent with one or more previous judgments in favor of the defendant." *Parklane Hosiery Co. v. Shore*, 439 U.S. 322, 330 (1979); *see also Gen. Dynamics Corp. v. Am. Tel & Tel. Co.*, 650 F. Supp. 1274, 1258 (N.D. Ill. 1986). Here, as discussed above, the result of litigation involving AUCRA's RPA has been mixed. Thus, collateral estoppel does not apply.

---

F.3d at 457. *Citizens I* and *II* and *Minnieland* thus run counter to the "consensus view" of federal case law that incorporating AAA Rules constitutes clear and unmistakable evidence of the parties' intent to delegate arbitrability to arbitrators. *Ali*, 2017 WL 5890876, at *3 (N.D. Ill. Nov. 27, 2017); *Schroder v. Teufel*, No. 17 C 6119, 2017 WL 5569758, at *4 (N.D. Ill. Nov. 20, 2017).

14

## IV. Conclusion

This Court converts AUCRA's motion to compel arbitration [16] into a motion to dismiss under Rule 12(b)(3), grants that motion, and dismisses this case without prejudice. AUCRA's request in the alternative to transfer venue is denied as moot. Civil case terminated.

Dated: September 23, 2019

Entered:

_____

John Robert Blakey
United States District Judge